IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 08-CR-30004-MJR ) |
| RONFREDRICK BOLING, | ) ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

    A.    Introduction

2008 was not a good year for Ronfredrick Boling. In January, a grand jury indicted Boling on three narcotics charges – possession with intent to distribute crack cocaine on October 3, 2007 and distribution of crack cocaine on October 18 and November 5, 2007, all in violation of 21 U.S.C. § 841. The year concluded with December guilty verdicts on all charges, following a three-day jury trial.

The eleven-month period between Boling's indictment and his conviction – time properly excluded under the Speedy Trial Act – included multiple trial continuances at Boling's request and a curious chronology of counsel entering and exiting on his behalf. Boling insisted on representing himself at trial, a decision that affected the presentation of evidence before the jury (about which Boling now complains). An overview of the procedural case history and trial testimony aids analysis.

### B. Key Facts and Procedural History

Boling's indictment was suppressed until he was arrested. He appeared before Magistrate Judge Frazier on March 31, 2008. Judge Frazier appointed the Federal Public Defender (FPD)'s Office to represent Boling, and trial was set for June 2, 2008. Attorney Jared Martin of the FPD's office appeared at Boling's arraignment. Three days later Assistant FPD Todd Schultz entered his appearance on Boling's behalf.

All went smoothly until mid-May 2008, when Boling moved for a hearing on the "status" of his counsel. The undersigned Judge immediately scheduled a hearing. Before the hearing was held, Boling filed a second pro se motion – this time asking Schultz to withdraw as defense counsel. The motion (Doc. 17) provided no reason whatsoever for this request, simply stating: "That Ronfredrick Boling wants attorney Todd Schultz to withdraw as counsel."

The Court held a hearing May 23, 2008, at which Boling stated that he did not "see eye to eye" with Schultz, it seemed Schultz wasn't helping him "fight," and he perceived that Schultz wanted him to cooperate (a course of action Boling was firmly against from the outset). After being thoroughly apprised of the consequences of switching attorneys (including the continuance of his trial date), Boling persisted in his request for different counsel. The Court granted the motion and appointed CJA Panel attorney G. Ethan Skaggs. Skaggs moved on Boling's behalf to continue trial at least 60 days. The motion was filed with a speedy trial waiver executed by Boling. The Court granted Boling's motion and continued trial to September 15, 2008.

Less than 30 days later, Boling filed a pro se motion seeking to dismiss his indictment based on a violation of the Speedy Trial Act. The Court struck the pro se motion and cautioned Boling against improperly filing pro se motions while represented by counsel.

Two weeks later, Boling moved pro se "to withdraw counsel" (Doc. 26), noting only that "Ronfredrick Boling wants attorney Ethan Skaggs to withdraw as counsel." The Court convened a hearing July 14, 2008, listened to Boling's reasons for requesting another attorney change, found those grounds meritless, denied the motion for new appointed counsel, and denied "at this time" Boling's oral motion to represent himself in this serious criminal matter. The July 14th Order outlined the steps Boling should take if, after he more fully considered the ramifications of proceeding pro se, he still wished to represent himself at trial (Doc. 29).

Just prior to his September 15th trial date, Boling indicated a desire to enter a guilty plea. The change of plea hearing was set September 11, 2008. When the parties were assembled in the courtroom on September 11th, however, Boling advised the Court that he wished to proceed to trial rather than plead guilty. Boling then orally moved to continue his trial (just four days away at that point). The Government interposed no objection to the continuance, and the Court granted the motion, moving trial to December 1, 2008 but cautioning Boling that no further continuances would be permitted: "He must proceed to trial on December 1, 2008 (or enter a guilty plea prior to that date)" (Doc. 34).

Three days after that Order was entered, Boling filed yet another "Motion to Withdraw Counsel," which the Court denied on September 17, 2008. Boling filed a pro se motion to reconsider the ruling on September 26, 2008, which the undersigned Judge denied on September 29, 2008 (Doc. 39), noting: "The motion presents no new issues, basis or grounds on which to 'reconsider' the Court's prior denial of Boling's motion to disqualify counsel. Trial will continue, as scheduled, on December 1, 2008, with attorney Ethan Skaggs representing Mr. Boling." Trial preparation continued in earnest. Attorney Skaggs filed and responded to motions in limine on Boling's behalf.

Ten days before the December 1st trial was to start, Skaggs filed (for Boling) a motion asking the Court to relieve Skaggs from representation and permit Boling to proceed pro se. Boling also filed his own pro se motion "to withdraw counsel" (Doc. 59) and pro se motion to dismiss the indictment (Doc. 60). The undersigned Judge heard and ruled on all these matters at in-court hearing on November 25, 2008. After conducting a full *Faretta* colloquy, the Court granted Boling's motions, relieved Skaggs from his role as counsel of record, permitted Boling to proceed pro se, and appointed Skaggs as standby counsel.

At the November 25th hearing, Boling tendered a list of witnesses he wanted subpoenaed for trial. (The list was later e-filed as Doc. 61). After inquiring as to the basis for calling each witness (e.g., whether the person was an alibi witness or perhaps had seen one of the alleged drug transactions) the Court ruled, ultimately issuing writs of habeas corpus ad testificandum for Anthony E. Moore and Tyrone Jackson.

Trial commenced December 1, 2008. Before jury selection, the Court offered Defendant Boling a final chance to elect to *not* proceed pro se. Boling declined. The undersigned Judge then explained the limited role which standby counsel (attorney Skaggs) would assume in the trial. Defendant acknowledged that he understood this. The undersigned Judge also discussed in detail why he was denying (or granting) Boling's request to subpoena certain individuals as witnesses.

The prosecutor and Defendant Boling made opening statements. The gist of Boling's opening statement was that the police officers falsified their reports, that the officers did not really recover crack cocaine from Boling on October 3, 2007, that Boling was a drug *user* but never a drug *dealer,* and that an eager confidential informant had worked with an overzealous police officer to "set up" Boling on the distribution charges stemming from the alleged sales on October 18 and November 5, 2007.

The Government's case-in-chief commenced with evidence regarding the October 3, 2007 charge for possession with intent to distribute cocaine base. The Government called Mt. Vernon Police Officer Kevin Jackson. Jackson testified regarding his arrest and search of Defendant Boling on October 3rd, which occurred while Jackson was investigating the report of a burglary at the residence of Travis Taylor (with whom Boling was living at that time). During a pat-down of Boling, Kevin Jackson recovered a baggy with 16 individual packets of what turned out to be crack cocaine. Boling's cross examination of Kevin Jackson focused on the fact that Kevin's call for back-up was responded to by his twin brother, Officer Kent Jackson.

Central to the Government's proof of the two distribution charges (occurring on October 18 and November 5, 2007) was the testimony of confidential informant Jeffrey a/k/a "Country" McCurdy, who had prior convictions for drug offenses and was a tattoo artist living in Mt. Vernon, Illinois in 2006 and 2007. Although sober by the date of the trial in this case, McCurdy acknowledged that he had used crack cocaine every day or every other day while living in Mt. Vernon. On cross examination by Boling, McCurdy admitted that he had been addicted to drugs since he was 12 years old, that he had bought drugs and shared drugs, that he had sold drugs to support his habit, and that he had even used some of the money he received from his informant work for the Mt. Vernon Police Department to purchase drugs.

McCurdy said he knew Ronfredrick Boling by the street name "Chaos" and bought drugs from Boling twice – October 18, 2007 and November 5, 2007. McCurdy testified regarding both controlled buys of crack cocaine from Boling, large portions of which were captured on videotape and played for the jurors at trial.

Well-versed in the habits of drug dealers and users, McCurdy testified that it was common for dealers to carry crack in their mouth. Over Defendant's objection, McCurdy testified that this is what Boling was doing on one of the videotapes when seen making a gesture toward his mouth. The videotape shows a rock of crack-like substance in McCurdy's hand immediately after this gesture. When he took the stand, Boling denied concealing the crack in his mouth and testified that his hand-to-mouth gesture was just a nervous habit resulting from a broken tooth.

After the cross, re-direct and re-cross of Jeff McCurdy, the Government called Detective Ron Almaroad, a 19-year officer of the Mt. Vernon, Illinois Police Department who has headed up the Drug Task Force for the past ten years. Detective Almaroad is known on the streets of Mt. Vernon as "Smiley." His primary responsibility as a police officer has been to investigate drug cases. He has been involved in approximately 170 federal narcotics cases and thousands of state narcotics prosecutions in Jefferson County, Illinois. He has vast experience with the packaging and distribution of cocaine base in the form of "crack" and testified regarding what a typical *user* would purchase or carry on his person (as opposed to a dealer). Almaroad testified about his use of informants, including Country McCurdy, who had done 27 buys for Almaroad and never was caught hiding drugs or trying to keep money given to him for a controlled purchase.

Additional witnesses were called by both parties, such as forensic scientists Joshua Stern and Thomas Sadowski who testified for the Government. Defendant Boling testified in his own defense via narrative on the second day of trial. His testimony continued on the third day, with the completion of cross examination by the Government, continued direct examination by Defendant Boling while the videotapes were shown to the jury (some of which was in the nature of re-direct testimony), and then cross by the Government (limited to Boling's testimony regarding the videotapes).

Outside the presence of the jury, Boling asked the Court to conduct re-direct examination (put himself back on the stand). The undersigned Judge ultimately

ruled: "You can re-direct as to the video testimony, but nothing as to what happened before the video today, because we have closed that door."

When Boling persisted in discussing what he wanted to present on re-direct, the Court asked Boling to share one question he would like to ask on re-direct, to be sure it was properly within the scope of re-direct. What Boling shared with the Court was in the nature of argument, as opposed to re-direct testimony, leading the Court to admonish: "We can't get into argument. We can only get into facts." When proceedings resumed, Boling instead opted to present (over the objection of the Government) witness Donnell Young, who testified that he was a family friend of Boling, and during the time they "hung out," Young never saw drugs or drug transactions at Boling's house or by Boling.

The Government presented three rebuttal witnesses, one of whom was Officer Kent Jackson, called on the final day of trial in response to an issue regarding the baggies of drugs reportedly found on Boling's person on October 3, 2007, the night the Taylor residence was burglarized.

Now a pastor, Kent Jackson was the Mt. Vernon Police Officer who responded as back-up for his brother on October 3, 2007. Kent testified that he arrived on the scene in time to see his brother Kevin remove the drugs ("a quantity of white rocks that looked like crack") from the front zipper area of Boling's pants.

On cross examination, Boling questioned Kent Jackson whether he had "anything that can prove that you all are identical twins." The prosecutor offered, "Your

Honor, if the defendant wants, I can have Kevin Jackson come in the back of the courtroom." The undersigned Judge then stated: "Send him in. Let's bring him in. Just come on up here. We want to look at you too. Okay, why don't you stand up there a minute. We're going to gaze at you. Thank you, sir, you can go back out."

After this brief jury view, Kevin Jackson left the courtroom, and Defendant Boling continued his cross examination of Kent Jackson, concentrating on whether Kent had changed his testimony about being present while Boling was handcuffed on October 3, 2007.

Following the Government's third rebuttal witness, the Court (over objection by the Government that it would be cumulative) permitted Defendant Boling to again call himself as a witness, to give sur-rebuttal testimony. That testimony, presented in narrative form, included Boling's recollection that Kent (not Kevin) Jackson handcuffed him and that Kent made a statement that he would do "whatever needed to be done" to back up his brother Kevin.

Boling made his own closing argument, challenging the Government's videotape evidence, criticizing Jeff McCurdy's credibility, and contending that the Government had not met its burden of proof. After roughly two hours of deliberations, the jury found Ronfredrick Boling guilty on all three counts. The jurors were excused, the Court set a sentencing date, and the undersigned Judge asked whether Boling wanted to continue representing himself. Boling responded that he did not and that he wanted Mr. Skaggs to reenter on his (Boling's) behalf.

The Court reappointed Skaggs to represent Boling and, five days later, granted Skaggs' unopposed motion for a 60-day extension of time in which to file post-trial motions.

Now before the Court is Boling's February 9, 2009 motion for judgment of acquittal or, in the alternative, for a new trial (Doc. 85) which was fully briefed as of April 8, 2009 (*see* Docs. 86, 87, 90 and 95). Finding no merit therein, the Court now denies Boling's motion, for the below-described reasons.

C. <u>Analysis</u>

Boling's motion (filed by counsel on his behalf) presents two arguments. First, the Court should grant a judgment of acquittal, because "the evidence submitted at trial was not sufficient to support the Defendant's conviction for the counts in the indictment" (Doc. 85, p. 1). Second, the Court should grant a new trial in the interest of justice, because (a) the Government improperly commented and the Court improperly participated during Boling's cross examination of rebuttal witness Kent Jackson, and (b) Boling was not allowed to conduct a re-direct after testifying on his own behalf, which "greatly prejudiced the Defendant's case" (Doc. 85, p. 2).

Federal Rule of Criminal Procedure 29 authorizes the district court, after the close of the Government's case or after the close of all the evidence, to enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction. On a sufficiency-of-the-evidence challenge, the court views the evidence "in the light most favorable to the verdict" and may "overturn the conviction only if

there is no evidence upon which a rational juror could have found the defendant guilty." *United States v. Turner*, 551 F.3d 657, 662 (7th Cir. 2008). *Accord United States v. Hendrix*, 482 F.3d 962, 966 (7th Cir. 2007).

The law of this Circuit emphasizes that a defendant who contests the sufficiency of the evidence following a jury verdict "faces a daunting task," *United States v. Wortman*, 488 F.3d 752, 754 (7th Cir. 2007), as the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the government. Just last month, in rejecting a post-trial challenge to the sufficiency of the evidence that a defendant had possessed crack cocaine with the intent to distribute it, the United States Court of Appeals for the Seventh Circuit characterized this standard of reviewing the evidence as "nearly insurmountable." *United States v. Irby*, 558 F.3d 651, 653-54 (7th Cir. March 11, 2009), *citing United States v. Knox*, 540 F.3d 708, 719 (7th Cir. 2008), *cert. denied,* 129 S.Ct. 1525 (2009).

Similarly, in *United States v. Blanchard*, 542 F.3d 1133, 1154 (7th Cir. 2008), the Seventh Circuit explained that a jury's guilty verdict can be overturned based on insufficiency of the evidence "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." In other words, this step is appropriate "only if the fact finder's take on the evidence was wholly irrational." *Blanchard*, 542 F.3d at 1154, *citing United States v. Bustamante*, 493 F.3d 879, 884 (7th Cir. 2007). *Accord United States v. Bailey*, 510 F.3d 726, 733 (7th Cir. 2007), *cert. denied*, 128 S.Ct. 2462 (2008).

Viewed in the light most favorable to the Government, the record here contains abundant evidence from which the jurors could find Ronfredrick Boling guilty beyond a reasonable doubt of all three offenses, violations of 21 U.S.C. § 841(a)(1)(possession with intent to distribute less than 5 grams of "crack cocaine" on October 3, 2007) and § 841(b)(1)(c)(distribution of less than 5 grams of "crack cocaine" on October 18 and November 5, 2007).

To convict Boling under 21 U.S.C. § 841(a)(1), the Government had to prove that he (1) knowingly or intentionally possessed crack cocaine (2) with the intent to distribute it (3) while knowing it was a controlled substance. *Irby*, 558 F.3d at 654, *citing United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008). The Government can prove the first element by demonstrating that the possession was either actual or constructive. *Id.* Actual possession was proven here. As to the intent to distribute, witnesses testified that the quantity of crack and the packaging here (16 individual baggies) indicate an intent to distribute the cocaine. A forensic scientist testified that the substance in question was crack cocaine, and – as in *Irby* – Defendant Boling does not challenge the fact that he *knew* crack cocaine was a controlled substance.

Likewise, the evidence adduced at trial buttresses the jury's conviction of Boling under 21 U.S.C. § 841(b)(1)(C), the two distribution charges. Videotape evidence corroborated the key details of the testimony of informant Jeff McCurdy, who purchased the crack directly from Boling on the two occasions supporting Counts 2 and 3 of the indictment. Captain Almaroad's testimony was eminently credible on this issue as well.

Boling's attack on McCurdy's credibility falls far short of requiring judgment of acquittal. The Seventh Circuit has held that the testimony of informants and drug users is not incredible or unbelievable as a matter of law, even if those informants have selfish motives for cooperating with law enforcement against the defendant.

For instance, in *Bailey,* 510 F.3d at 733-34 **(emphasis added)**, the Court declared:

> At trial, the government brought in thirteen lay witnesses, most of whom had damning things to say about Williams. To parry the blow of their testimony, Williams asks this Court to deem the testimony of the witnesses who testified against him incredible as a matter of law. **Williams argues that the government's lay witnesses should not be believed because they were drug users at the time of the investigation and had ulterior motives aside from fulfilling their civic duties. This is a tall order, which we decline to fill.**
>
> Though undoubtedly not pillars of society, the government's witnesses were not unbelievable as a matter of law by virtue of their drug use. A witness's testimony is incredible as a matter of law if it is "physically impossible for the witness to [have] observe[d] that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all."

In the case sub judice, the jury could and did credit Jeff McCurdy's testimony. He personally exchanged drugs and money with Defendant Boling, using money provided by Detective Almaroad before the buy and returning crack cocaine to Detective Almaroad after the buy (crack that was not on McCurdy's person before the transaction), and having his movements to and from the buy closely monitored by the police.

Put bluntly, narcotics "prosecutions frequently involve, of necessity, the testimony of drug users" and cooperating witnesses. "Although the use of informants is an unattractive business," courts have countenanced their use from time immemorial. "Unveiling criminal operations in which the participants have a strong incentive to conceal their efforts often requires coopting those who had once engaged in the same sordid business." *Bailey*, 510 F.3d at 734.

The Court rejects Boling's challenge to the sufficiency of evidence to support his convictions. Viewing the evidence in the light most favorable to the Government, only one conclusion follows: the jurors rationally could have found each essential element of the three counts proven against Boling beyond a reasonable doubt. *See United States v. Thornton*, 539 F.3d 741, 748 (7th Cir. 2008). Thus, the Court denies the motion for judgment of acquittal.

Boling alternatively moves for a new trial. Federal Rule of Civil Procedure 33 governs new trial motions. Rule 33 authorizes a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Reyes,* 542 F.3d 588, 596 (7th Cir. 2008), *quoting* FED. R. CRIM. PROC. 33. Boling asserts that the interest of justice requires a new trial for him on dual bases.

First, he contends that the Government improperly commented (and the undersigned Judge improperly interjected himself) during the cross examination of Kent Jackson. This argument is utterly unavailing.

In *United States v. Loggins*, 486 F.3d 977, 983 (7th Cir.), *cert. denied*, 128 S.Ct. 805 (2007), the Seventh Circuit rejected the contention that a new trial was required based on allegedly prejudicial comments made by the prosecutor regarding a gun used in a robbery. More particularly, the prosecution (during rebuttal argument) changed its theory of the case and suggested for the first time that a real gun, as opposed to a toy gun, was used in the commission of the crime. The Seventh Circuit affirmed the denial of the new trial motion, emphasizing:

> The charge against [Defendant] did not require that the government prove that a real weapon was used during the course of the robbery. Moreover, the existence of the gun and its relationship to [Defendant] were already part of the evidence. Thus, the prosecutor's comments did not implicate the core issue of [Defendant's] guilt or innocence. …. **With or without the arguments, the elements of the charged crime would still be satisfied.**

*Id.* at 983, emph. added. The Seventh Circuit also pointed out that defendant Loggins had *invited* the prosecutor's comment. *Id.*

The reasoning of *Loggins* applies with equal force here. Boling takes issue with the prosecutor volunteering – during Boling's cross examination of rebuttal witness Kent Jackson (the former-police-officer-turned-pastor) – that *Kevin* Jackson was in the hallway just outside the courtroom. Boling arguably invited this comment by demanding of witness Kent Jackson whether he had "anything that can prove that you all are identical twins," prompting the prosecutor to remark that twin brother Kevin was available just outside the door.

The prosecutor merely offered, "Your Honor, if the defendant wants, I can have Kevin Jackson come in the back of the courtroom." This is no way denied Boling due process or infected the trial process. Nor did the undersigned Judge's response to the prosecutor, "Send him in. Let's bring him in," or his remark to Kevin Jackson once in the courtroom, "Just come on up here. We want to look at you too. Okay, why don't you stand up there a minute. We're going to gaze at you. Thank you, sir, you can go back out."

More importantly, Boling has identified no prejudicial impact of these remarks or the brief "viewing" of Kevin Jackson by the jurors. What's more, Boling did not object to the plan to bring Kevin into the courtroom at the time these remarks were made. Plus, Kevin Jackson never spoke a word to the jurors. He simply stood before them momentarily while his brother was on the witness stand. If the Court had not directed Kevin to enter the courtroom, the Government certainly would have done so at the next opportunity.

As in *Loggins*, "the prosecutor's comments did not implicate the core issue of [Defendant's] guilt or innocence." With or without the Court permitting Jackson to be briefly brought before the jury, "the elements of the charged crime would still be satisfied." *Id.*, 486 F.3d at 983. So even assuming this "jury view" somehow hurt the defense, any effect was insignificant in light of the tremendous weight of the evidence against Boling. A new trial is not warranted on this basis.

Boling also accuses the undersigned Judge of assisting the prosecution by adducing evidence regarding the Jackson twins. "The Court essentially called a witness for the Government and conducted a display for the jury.... By asserting itself in the trial and ordering Kevin Jackson into the courtroom during the cross examination of Kent Jackson, the Court essentially belittled the Defendant in front of the jury" (Doc. 86, p. 3). Boling claims that a new trial is needed, because the undersigned Judge discredited Defendant Boling in the eyes of the jury. That argument does not accurately reflect what happened at trial and mischaracterizes the Court's role in the proceedings.

Federal Rule of Evidence 605 prohibits a presiding district court judge from testifying at trial as a witness or engaging in conduct equivalent to testifying. Thus, a District Judge may not "add to the evidence by assuming the role of a witness," make statements to the jury " based upon his own personal knowledge of matters external to the trial," or interject observations derived from facts not otherwise in the record "which the prosecution was otherwise unable to establish." *Blanchard*, 542 F.3d at 1148-49.

However, it is entirely appropriate (even routine) for a district judge to facilitate the jury's understanding of the issues by questioning witnesses and explaining or summarizing the evidence. *Id.* Federal Rule of Evidence 614 vests district judges with discretion to question witnesses (including defendants) for the purposes of clarifying testimony. *See, e.g., Kapelanski v. Johnson*, 390 F.3d 525, 534-35 (7th Cir. 2004).

Asking Kevin Jackson (a witness immediately available to either party) to step into the courtroom and briefly stand before the jury did not cross the line or transform the Court's role from presider to witness. The undersigned Judge never asked Kevin Jackson a single question, and the light-hearted directive to Kevin Jackson to "come on up here" so we can "gaze at you" did not belittle *Defendant Boling* in any way. The undersigned Judge never abandoned his impartiality or assumed the role of an advocate for the prosecution.

Moreover, an instruction read at the commencement of trial prevented any negative impact the undersigned Judge's brief comment to Kevin Jackson could have had on Defendant Boling. Court's Preliminary Instruction #1 plainly and expressly advised the jurors that it was *their duty alone* to find the facts, and "Nothing I may say or do during the course of the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be." Kevin Jackson's appearance in the courtroom in no way entitles Boling to a new trial.

Boling's final basis for a new trial fares no better. Boling challenges the Court's refusal to permit him re-direct examination after the Government completed its cross examination on the second of two portions of his testimony. This argument is a nonstarter.

Federal district courts enjoy wide latitude in matters of trial management, including imposing reasonable limits on the scope of cross examination and re-direct

examination. *See Griffin v. Foley*, 542 F.3d 209, 217 (7th Cir. 2008); *United States v. Smith*, 308 F.3d 726, 738 (7th Cir. 2002). So, for instance, if an area is already sufficiently explored, the court may prevent "repetitive or marginally relevant interrogation." *Smith*, 308 F.3d at 738, *citing United States v. Cavender,* 228 F.3d 792, 798 (7th Cir. 2000), *cert. denied*, 532 U.S. 1023 (2001). *See also United States v. Given*, 164 F.3d 389, 391 (7th Cir. 1999)(rejecting defendant's claim that trial court erred in cutting off re-direct examination after several questions).

In the case at bar, Defendant Boling, proceeding pro se, testified in narrative format. He presented a lengthy direct testimony, which was divided into two segments, with the second segment focused on the videotape evidence of the drug buys. The Government cross examined Boling after the first segment of his direct testimony. Boling then presented the second segment of his direct testimony, followed by the Government's cross examination on those issues. Boling acknowledges that he was afforded an opportunity for re-direct after the *second* portion of his presentation but assigns error to the fact he "never received the opportunity to rehabilitate himself after the damaging … cross-examination … with respect to the first part" of his direct testimony (Doc. 86, p. 5).

If Boling had proceeded to trial with counsel, this segmented presentation of his direct testimony may not have been necessary, and the normal flow of direct, cross, re-direct examination likely would have ensued. However, Boling demanded to

represent himself at trial, a decision which resulted in the Court having to take certain measures to ensure the organized and efficient presentation of evidence to the jury.

In any event, Boling's argument that a new trial is warranted based on the Court's refusal to allow more extensive re-direct examination fails for one simple reason. Boling never (at trial via offer of proof *or* post-trial via the pending motion) pointed to any relevant testimony he would have put forth, had the Court permitted him additional re-direct examination. *See, e.g., Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630-31 (7th Cir. 2008). Furthermore, the Court allowed Boling to call himself back to the stand to present *sur-rebuttal* testimony after the Government's rebuttal witnesses testified. Boling had ample opportunity to present his testimony directly to jurors.

D. Conclusion

The record before the Court contains no ground supporting a judgment of acquittal or a new trial. Accordingly, the Court DENIES Boling's February 9, 2009 motion (Doc. 85).

IT IS SO ORDERED.

DATED this 30th day of April 2009.

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge